Miraena J. **RIDLEY**, a minor, by her parent and natural guardian, Norman L. **RIDLEY**, and Norman L. Ridley, in his own right, Appellees,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 23, 1999.
Filed Dec. 17, 1999.
Reargument Denied Feb. 17, 2000.

William M. Radcliffe, Uniontown, for appellant.

Robin S. Wertkin, Pittsburgh, for appellees.

Before EAKIN, LALLY–GREEN and BROSKY, JJ.

BROSKY, J.

¶ 1 The question presented in this appeal is whether the trial court properly granted summary judgment in favor of plaintiffs in a Declaratory Judgment action, on the basis that a household exclusion contained in their automobile insurance policy was invalid and unenforceable as against public policy. For the reasons that follow, we reverse and remand to the trial court.

¶ 2 Appellant is State Farm Mutual Automobile Insurance Company ("Appellant" or "State Farm"). Appellees are Miraena J. Ridley, a minor, by her parent and natural guardian, Norman L. Ridley, and Norman L. Ridley, in his own right (collectively "Appellees" or "Ridleys"). The facts and procedural history of this matter are as follows.

Miraena, a minor, and her father (Norman) were passengers in a 1991 Dodge Colt automobile operated by Frances Rocereto (Rocereto), the mother of Miraena, an adult individual.... Rocereto's automobile collided with an oncoming vehicle causing severe injuries to [Miraena and Norman].

Rocereto was the named insured on the Dodge, which was insured by State Farm. The limits of the liability coverage on the Dodge of $50,000.00 were paid to [Miraena and Norman]. However, the Dodge [had] no underinsured coverage.

At the time of the accident, Norman Ridley and Rocereto were the named insureds on a 1984 Mercury insured by [State Farm] as well. This policy provided underinsured coverage in the amount of $25,000.00/$50,000.00 [$25,000.00 each person, $50,000.00 each accident]. After exhausting the liability limits of the Dodge, [Miraena and Norman] attempted to collect the underinsured benefits set forth in the Mercury policy

[for the Dodge as an underinsured motor vehicle].

However, [State Farm] denied [Miraena and Norman's] claims because of exclusionary language contained in the policy insuring the Mercury. The relevant language reads as follows:

> "An underinsured motor vehicle does not include a land motor vehicle furnished for the regular use of you, your spouse, or any relative."

Trial Court Opinion, 12/30/98, at 1–2.

¶ 3 Appellant denied the Ridleys' request for underinsured motorist benefits under the 1984 Mercury policy. The Ridleys brought an action pursuant to the Declaratory Judgment Act, 42 Pa.C.S.A. § 7531 *et seq.* After the taking of depositions, Appellant filed a Motion for Summary Judgment. Appellant asserted that, since the policy for the 1984 Mercury defines "you" to include a named insured, and Rocereto was the named insured on the Dodge available for her regular use, the Dodge was subject to the household exclusion. Appellant argued, therefore, that the Dodge was not an underinsured motor vehicle under the Mercury policy.

¶ 4 The Ridleys also filed a Motion for Summary Judgment. The Ridleys asserted that the household exclusion in the policy for the Mercury was void and unenforceable as against public policy. The trial court granted the Motion for Summary Judgment filed by Appellees and denied the Motion for Summary Judgment filed by Appellant. This appeal followed.

¶ 5 On appeal, Appellant raises two issues:

1. Does the household exclusion contained in the State Farm Insurance Policy clearly conflict with public policy?
2. Did the trial court err in giving precedential value to an unreported memorandum decision of the Superior Court, [*i.e.*, *Burstein v. Prudential Property and Casualty Ins. Co.*, (No. 2619 Philadelphia, 1997, memorandum filed September 22, 1998) ]?

Appellant's Brief at 3. Appellees do not dispute that the household exclusion, as applied by Appellant, would bar their recovery of underinsured motorist coverage. *See Insurance Co. of the State of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 657 A.2d 976, 977–78 (1995)(stating that, where a provision of a contract is clear and unambiguous, it will be applied as written).

¶ 6 Our standard of review on an appeal from a grant of summary judgment is stated as follows:

> [A] reviewing court must examine the record in a light most favorable to the nonmoving party, accepting as true all well-pleaded facts and giving that party [the] benefit of all reasonable inferences which can be drawn from those facts. The Superior Court will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion.

*Myers v. Triad Controls, Inc.,* 720 A.2d 134, 135 (Pa.Super.1998). When a trial court determines that a provision in an insurance policy violates the public policy of this Commonwealth, our standard of review is plenary, and the issue presents a question of law for this court to determine. *See generally Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

¶ 7 There have been a number of decisions by our Supreme Court and this Court involving the issue of whether an exclusionary clause in an automobile insurance policy similar to the type involved in this case should be ruled to be invalid and unenforceable as against public policy. The most recent Supreme Court case is *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998).

¶ 8 In *Eichelman,* the appellant, while riding his motorcycle, was struck by a pick-up truck operated by another person. The appellant was injured and recovered the liability limits of the insurance policy for the pick-up truck. The appellant had waived underinsured motorist coverage for

his motorcycle in his own policy. Appellant's mother and her husband each had a separate policy for two other vehicles. These vehicles were insured by appellee Nationwide Insurance Company. Each Nationwide policy provided underinsured motorist coverage for the named insured and any relative who resided with the named insured. Since the appellant resided with his mother and her husband, he sought underinsured motorist coverage under their policies.

¶ 9 Nationwide denied coverage under the exclusion in the Nationwide policies that provided that underinsured motorist coverage did not apply to bodily injury suffered while occupying a motor vehicle owned by you or a relative not insured for underinsured motorist coverage under the Nationwide policy at issue. The appellant sought a declaratory judgment that he was entitled to underinsured motorist benefits under each Nationwide policy. He argued that the exclusion was void as against public policy. The trial court granted the appellant's motion for summary judgment in *Eichelman*. This court reversed, and the Supreme Court granted allowance of appeal.

¶ 10 The Supreme Court in *Eichelman* stated the following:

> Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy.... When examining whether a contract violates public policy, this Court is mindful that public policy is more than a vague goal [that] may be used to circumvent the plain meaning of the contract.... As this court has stated:
>
>> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only domi-

nant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action....

¶ 11 This Court has further elaborated that:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Eichelman*, 711 A.2d at 1008 (quotations and citations omitted).

¶ 12 In examining whether the exclusion in the Nationwide policies violated public policy, the Supreme Court set out the legislative intent behind the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701 *et seq.*, and its underinsured motorist provisions. The *Eichelman* Court recognized that the purpose of the underinsured motorist coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries. *Eichelman*, 711 A.2d at 1008.

¶ 13 Addressing three matters that had previously been brought before the Court, the Supreme Court determined that there exists a lack of unanimity of opinion that the type of exclusion in the Nationwide policies at issue in *Eichelman* violates public policy. *See Eichelman*, 711 A.2d at 1008–1009 (citing *Paylor v. Hartford*, 536 Pa. 583, 640 A.2d 1234 (1994); *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994); and *Hart v. Nationwide Ins. Co.*, 541 Pa. 419, 663 A.2d 682 (1995)).

¶ 14 In *Paylor*, the Supreme Court addressed the question of whether a "family car exclusion" was valid and enforceable under the MVFRL. The family car exclusion at issue excluded from the definition of an underinsured motor vehicle a vehicle owned by, or furnished or available for the regular use of, the named insured or any family member. The Supreme Court held that, under the facts presented in *Paylor*, the exclusion was valid and enforceable. Those facts were as follows.

¶ 15 A husband (the driver) and his wife (the passenger) were both traveling in a motor home and were killed in a single-vehicle accident. The motor home was insured under a policy issued by Foremost Insurance Company, and both the husband and wife were named insureds on the policy. The husband and wife also had three other vehicles that were insured under a separate policy issued by the appellant, The Hartford Insurance Company. The husband and wife were named insureds on this second policy. After the estate of the decedents recovered the liability limits on the Foremost policy, it sought to recover underinsured motorist benefits under the Hartford policy. Hartford denied coverage based on the family car exclusion. The estate brought a declaratory judgment action against Hartford, asserting that the exclusion violated public policy and requesting that it be declared invalid.

¶ 16 After a trial, the trial judge in *Paylor*, sitting without a jury, entered judgment in favor of Hartford. This Court reversed on appeal. The Supreme Court reversed our decision, however, upholding the judgment in favor of Hartford. In reaching this conclusion, the Supreme Court reviewed this Court's decisions in *Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988); [1] *Newkirk v. United Services Automobile Association*, 388 Pa.Super. 54, 564 A.2d 1263 (1989); [2] *Kelly v. Nationwide Ins. Co.*, 414 Pa.Super. 6, 606 A.2d 470 (1992); [3] and *Marroquin v. Mutual Bene-*

---

1. In *Wolgemuth*, this Court, sitting *en banc*, held that a guest passenger who was injured in a one-vehicle accident could not recover underinsured motorist benefits under a policy applicable to the host vehicle. This Court reasoned that allowing the passenger's estate to recover underinsured motorist benefits from the appellee-insurer would be to allow recovery by converting underinsured motorist benefits into liability coverage. In *Wolgemuth*, we found that the policy provision, excluding from the definition of an underinsured motor vehicle a vehicle owned by, or furnished or available for regular use of, an insured or any family member, did not offend public policy. We pointed out that the decedent had no recognizable contractual relationship with the insurer of the vehicle, had paid no premiums for underinsured motorist coverage, and had no reasonable expectation of coverage under the policy issued by the appellee.

2. In *Newkirk*, the appellant was injured while riding as a passenger in her husband's car. The appellant sought a declaration of her right to recover underinsured motorist benefits under a policy issued by the appellee to her husband. The husband's policy contained an exclusion that an underinsured motor vehicle did not include any vehicle owned by, or furnished or available for the regular use of, you or any family member. "You" was de-

fined as the named insured and the spouse if a resident of the same household.

Relying on *Wolgemuth*, the appellant in *Newkirk* argued that she had a contractual relationship with the insurer, that she had paid premiums to the insurer, and that she had a reasonable expectation of underinsured motorist coverage under her husband's policy. This Court held that the appellant was not entitled to recover underinsured motorist benefits under her husband's policy, since she had already recovered liability coverage under that policy. Although noting the harsh result, we stated that the appellant could only receive the benefits for which she had contracted insurance and that it would be against public policy to rewrite the insurance contract.

3. In *Kelly*, the appellant and her husband were the named insureds on a single policy issued by Nationwide covering two vehicles. The appellant was injured while riding in one of the vehicles operated by her husband. After receiving the liability limits of the policy for that vehicle, the appellant sought underinsured motorist benefits for the non-accident vehicle. Nationwide denied the request on the basis of an exclusion stating that any motor vehicle insured under the liability coverage of the policy would not be considered

*fit Ins. Co.,* 404 Pa.Super. 444, 591 A.2d 290 (1991).[4] The Supreme Court stated:

> The litany of cases demonstrates that the "family car exclusion" is not necessarily violative of public policy or the legislative intent underlying the MVFRL. The enforceability of the exclusion is dependent upon the factual circumstances presented in each case.

*Paylor,* 640 A.2d at 1240 (citation omitted).

¶ 17 The Supreme Court found in *Paylor* that all three of the policies under which the estate of the appellant sought to recover underinsured motorist benefits were in the names of both husband and wife. Importantly, in *Paylor,* the estate was seeking underinsured coverage under additional policies owned by the decedents themselves, not because an underinsured driver was responsible for the injuries, but because the policy covering their own vehicle provided insufficient coverage. The Supreme Court thus found the situation similar to that in *Linder,* (*supra* at n. 4), and distinguishable from that in *Marroquin.* The *Paylor* Court concluded that the family car exclusion should be enforced in that case to prevent an attempt to con-

vert underinsured motorist coverage into liability coverage. Thus, the legislative intent of the MVFRL and the expression of public policy articulated in the case law of Pennsylvania would be promoted by enforcing the exclusion. *See Paylor,* 640 A.2d at 1241.

¶ 18 After discussing *Paylor,* the Supreme Court in *Eichelman* discussed its rulings in *Windrim* and *Hart.* The *Eichelman* Court explained that in *Windrim,* the appellant was driving his uninsured automobile and was injured by the negligence of an unknown hit-and-run driver. The appellant was living with his mother. He sought uninsured motorist coverage under a policy his mother had on her vehicle with Nationwide. Nationwide denied the claim based on an exclusionary clause nearly identical to the clause in *Eichelman,* except that it pertained to uninsured motorist coverage.

¶ 19 The *Windrim* Court found that the exclusion did not violate public policy, and was valid and enforceable, because it discouraged people residing in the same household with several vehicles from purchasing insurance for only one of the vehi-

---

an underinsured motor vehicle. The appellant sought to have the exclusion declared void as against public policy and the legislative intent of the MVFRL. This Court, citing *Wolgemuth,* found that the exclusion was in accord with the purpose of underinsured motorist coverage, *i.e.,* protection of an injured claimant against the risk that a tortfeasor over whom the claimant has no control purchases an inadequate amount of liability insurance. We upheld the exclusion because the appellant and her husband had complete control over the amount of coverage maintained on their vehicles.

**4.** In *Marroquin,* an automobile owned and operated by the appellant's brother struck and injured the appellant. The appellant received the liability limits of his brother's policy and sought underinsured motorist benefit coverage under his parents' automobile insurance policy. The parents' policy had a family car exclusion, providing that an underinsured motor vehicle did not include any vehicle owned by, or furnished or available for the regular use of, a family member of the named insured. This Court held that the family car

exclusion in *Marroquin* was unenforceable because there were two insurance policies involved and there was no evidence that the appellant and his family were acting as one to convert underinsured motorist coverage into liability coverage.

This Court in *Marroquin* rejected the distinction drawn by the trial court on the basis of *Linder by Linder v. State Farm Mutual Automobile Ins. Co.,* 364 N.W.2d 481 (Minn.Ct. App.1985), as incorrect. The *Marroquin* Court explained that in *Linder,* the plaintiff was struck by a vehicle driven by her brother and was paid the liability limits of the insurance for that vehicle. The plaintiff then sought underinsured motorist coverage pursuant to separate policies on two other family vehicles. The family car exclusion in the policies was upheld, as the three insurance policies at issue were all in the name of the plaintiff's father as the insured, and the father could not be permitted to convert his inexpensive underinsured motorist coverage into liability coverage. After distinguishing *Linder,* this Court in *Marroquin* reversed and remanded the grant of summary judgment.

cles and seeking uninsured motorist coverage under their relative's insurance policy. The Supreme Court in *Windrim* expressed the concern that such a procurement of insurance by a household was an abuse of the MVFRL system.

¶ 20 In *Hart*, the appellees were driving an automobile insured under one policy, and sought underinsured motorist benefits under a separate policy with Nationwide. Nationwide invoked the exclusionary language in that policy (virtually identical to the language at issue in *Eichelman*) to bar the underinsured benefits. The Supreme Court in *Hart* issued a decision, *per curiam*, reversing the lower courts' conclusions that the exclusion was void as against public policy.

¶ 21 Against this background, the Supreme Court in *Eichelman* ruled that giving effect to the exclusionary clause in *Eichelman* would further the legislative purpose behind the provision for underinsured motorist coverage in the MVFRL. The *Eichelman* Court reasoned that the appellant had voluntarily chosen not to purchase underinsured motorist coverage and, in return, had received reduced insurance premiums. Further, the Court reasoned that allowing the exclusion to stand was consistent with the purpose behind the MVFRL of stopping the spiraling costs of automobile insurance in the Commonwealth. The *Eichelman* Court stated:

> If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most

likely result in higher insurance premiums on all insureds (even those without family members living in their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage.

*Eichelman*, 711 A.2d at 1009.

¶ 22 The Supreme Court reminded that it is only in the clearest of cases that a court may make an alleged public policy the basis of judicial decision. *Id.* Finding the situation in *Eichelman* not to be the clearest of cases, the Supreme Court found that it was beyond judicial authority to declare the clear and unambiguous contract language in the Nationwide policies void as against public policy. The *Eichelman* Court found the exclusions valid and enforceable.

¶ 23 Here, the trial court focused on the fact that the Ridleys were not named insureds on the policy for the Dodge as distinguishing this case from the scenario in *Eichelman* and *Paylor*. We do not agree that this fact constitutes a valid distinction. We find that the trial court construed the Supreme Court's decision in *Eichelman* and the case law discussed therein too restrictively.[5] As the Supreme Court recognized in *Eichelman*, citing *Paylor*:

> The purpose behind underinsured motorist coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries.

*Eichelman*, 711 A.2d at 1008. The circumstances presented by the instant appeal present the type of situation that abuses

---

5. The trial court should not have relied on this Court's unpublished memorandum decision in *Burstein*. Such a decision has no value as precedent. *Boring v. Erie Ins. Group*, 434 Pa.Super. 40, 641 A.2d 1189, 1191 (1994). The trial court did not rely *solely* on the decision in *Burstein*. Rather, the trial court reached its decision on the basis of a number of cases that were of value as prece-

dent. *Cf. Commonwealth v. Brezan*, 418 Pa.Super. 243, 614 A.2d 252, 253 (1992)(wherein this Court refused to affirm an order granting a new trial; the trial court order was based solely on the erroneous belief that an unpublished memorandum decision of this Court was binding). Thus, we need not reverse the trial court's decision on the basis of the inclusion of *Burstein* in the discussion.

**14**

the underinsured motorist benefits coverage contemplated by the Legislature when enacting the MVFRL. *See Eichelman, supra,* and *Paylor.*

¶ 24 Section 1733 of the MVFRL provides a priority of recovery for underinsured and uninsured motorist benefits. 75 Pa.C.S.A. § 1733. Under this system, for payment, an injured claimant must first turn to the vehicle in which he or she was an occupant at the time of the injury before turning to a motor vehicle not involved in the accident for which the injured person is an insured. Consistent with this scheme, the appellees first looked to the policy for the Dodge then turned to the non-accident vehicle policy, on which the injured Norman Ridley was a named insured, for underinsured motorist benefits coverage.

¶ 25 In this case, although Rocereto and Ridley claim that they were not formally married, they had a daughter, Miraena, together and owned the 1984 Mercury together. It can be inferred that Rocereto and Norman Ridley were acting as one in determining the insurance coverage for the 1984 Mercury they owned together. Rocereto voluntarily chose how much liability coverage to purchase for the Dodge, in which she was transporting her child and her child's father at the time of the accident. To allow the Ridleys to turn to the underinsured motorist coverage purchased for the 1984 Mercury, in effect, would permit the pair consisting of Rocereto and Norman Ridley to convert inexpensively purchased underinsured motorist coverage into liability coverage for the Dodge. Such a result is contrary to the Supreme Court's holdings in *Eichelman* and *Paylor.*[6] We hold that the household exclusion is valid and enforceable. Under the policy for the 1984 Mercury, the Dodge was a land motor vehicle available for the regular use of one of the named insureds, *i.e.,*

Rocereto. As such, the Dodge was excluded from the definition of an underinsured motor vehicle.

¶ 26 Thus, we conclude that the trial court erred in granting summary judgment in favor of appellees and finding the exclusion void as against public policy and the legislative intent of the MVFRL. Accordingly, we reverse the trial court's order and remand the matter to the trial court for further proceedings consistent with this Opinion.

¶ 27 Order reversed. Appeal remanded for further proceedings in accordance with this Opinion. Jurisdiction is relinquished.

¶ 28 LALLY–GREEN, J. concurs in the result.

---

6. We reject the assertion made by the appellees herein that the present appeal is controlled by this court's decision in *Marroquin.* Importantly, this Court in *Marroquin* perceived no facts from which it could be inferred that the persons involved in that case were acting as one and attempting to convert underinsured motorist liability coverage into liability coverage.