# Freedom Medical Supply Inc. v. PMA Capital Insurance Co.

98

C.P. of Philadelphia County, April Term, 2008 No. 003988

*Robert D. Greenbaum, Andrea L. Wilson* and *Robert S. Kitchenoff*, for plaintiffs.

*Bradley J. Vance, Bryan M. Ferris, Robert J. Foster, Richard H. Maurer, Ryan N. Boland* and *Keith E. Smith*, for defendants.

GLAZER, *J.*, Aug. 8, 2014—Over the last 12 years, this trial court[1] has hosted a series of class actions brought by medical providers against various insurance companies that neglected to pay statutorily mandated interest on late reimbursement payments under the Workers Compensation Act ("WCA") and the Motor Vehicle Financial Responsibility Law ("MVFRL"). While

---

1. The undersigned uses the term "this court" in this opinion to encompass all the past and present judges of the civil trial division in Philadelphia County, not just the undersigned. We are part of a unified judicial system; we strive for consistency in our decision making and are ever mindful of the law of the case doctrine and other rules regarding legal precedent.

the statutes foci are quite different — the WCA governs medical services provided to employees injured at work, and the MVFRL governs medical services provided to people injured in auto accidents — both statutes require that an insurer pay claims within 30 days after it is billed properly by a medical provider or that it pay interest on the amount it does not pay timely.[2]

One of the earlier of this court's medical provider class actions was filed in 2002, under the MVFRL, by Richard S.Glick, D.O. against Progressive Northern Insurance Company ("Progressive").[3] This court certified the class of medical providers in *Glick*[4] and made rulings as to Progressive's liability for payment of interest.[5] Those rulings were eventually appealed.

While *Glick* was being litigated before this court, additional, similar, class actions were filed by plaintiff Freedom Medical Supply, Inc. ("Freedom"). Specifically, Freedom filed the present action against the PMA Companies ("PMA") under the WCA,[6] and it filed an action against American Independent Insurance Company

---

2. MVFRL — 75 Pa. Cons. Stat. § 1716 ("Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits...overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due.") WCA — 77 Pa. Stat. § 531(5) ("The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records"); 34 Pa. Code § 127.210 ("If an insurer fails to pay the entire bill within 30 days of receipt of the required bills and medical reports, interest shall accrue on the due and unpaid balance at 10% per annum.")

3. *Glick v. Progressive*, March Term, 2002, No. 001179.

4. Order entered October 2, 2003 (Cohen, J.).

5. Order entered April 17, 2009 (New, J.)

6. *Freedom v. PMA*, April Term, 2008, no. 03988.

("AIICo") under the MVFRL.[7] Freedom also filed several other class actions against other insurance companies under the WCA and MVFRL, which actions either settled or are in the process of settling.

In this case, this court certified the following class against PMA:

> All providers who submitted bills and reports under the Pennsylvania Workers Compensation Act, 77 P.S. §1, et seq., as amended (the "Act"), to one or more defendants, and who received a payment which was issued more than thirty (30) days after receipt of the bill and report by defendant(s), but which payment did not include interest earned on or after April 8, 2002, or included less than the amount of interest provided for in the Act.[8]

Similarly, in the *AIICo* case, this court certified a class of medical providers who were owed interest under the MVFRL.[9]

The parties in this *PMA* action then proceeded to conduct contentious merits discovery, and in November, 2013, this court held a trial of this matter. The parties submitted their proposed findings of fact and conclusions of law on January 31, 2014. One week prior to those submissions, the Superior Court's decision in *Glick* was announced.

In the *Glick* opinion, the Superior Court held that the class of medical providers should not have been certified under the MVFRL because "what will constitute

---

7. *Freedom v. AIICo*, February Term, 2009, no. 04484.
8. Order entered August 29, 2011 (New, J.)
9. Order entered January 13, 2014 (Glazer, J.)

'reasonable proof' [of the amount of benefits due] is a question of fact answered on a case by case basis after review of relevant evidence addressing several factors, including coverage, causation, and medical necessity.... This factual inquiry requires individualized determinations not readily suitable for class action."[10]

After the *Glick* decision was issued, defendant in *AIICo* filed a motion for reconsideration on the issue of class certification. In addition, this court allowed PMA to file a motion to decertify the class in this action, which motion was not fully briefed until May, 20, 2014.

On June 9, 2014, this court granted the *AIICo* defendant's motion for reconsideration and decertified the class in that case. That decision has been appealed. The precise issue that was before the Superior Court in *Glick* was before this court in *AIICo* — namely whether a medical provider's submission to the insurer of a standard HCFA-1500 or UB-92 form[11] is sufficient evidence of the benefits due to the provider under the MVFRL that it triggers the thirty day period in which the insurer must pay the claim or pay interest if the claim is paid late.

Although the Superior Court's *Glick* opinion is unpublished and generally non-precedential,[12] this court was compelled for consistency's sake to adopt the Glick court's reasoning as this court's own in *AIICo* because the

10. *Glick v. Progressive Northern Ins. Co.*, no. 2073 EDA 2012 & no. 2145 EDA 2012 (Sup. Ct. Jan. 24, 2014).

11. For purposes of this opinion, this court will refer to both of these standard billing forms as "HCFA-1500."

12. "An unpublished memorandum decision shall not be relied upon or cited by a court or a party in any other action or proceeding, except when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppels." 210 Pa. Code § 65.37; *Boring v. Erie Ins. Grp.*, 434 Pa. Super. 40, 43, 641 A.2d 1189, 1191 (1994).

two classes of medical providers overlapped significantly. Now, in its motion to decertify the class, PMA asks this court to apply similar reasoning in this WCA case.[13]

Although the MVFRL and WCA evidence the same legislative intent — to encourage insurers to pay provider claims promptly by imposing an interest penalty for late payment — the two statutes use different language to create the disincentive to late payment. The MVFRL provides that "[b]enefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits."[14] The WCA is worded differently; it provides that "[t]he employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records."[15] However, the difference in language is not sufficient to create a difference in outcome. If a class of late paid providers cannot be certified under the MVFRL, then it should not be certified under the WCA either.

The question before the *Glick* court and before this court in *AllCo* was whether the HCFA 1500 billing form, which is routinely submitted by the provider class members to the insurer, constitutes "reasonable proof of the amount of

---

13. An order certifying a class "may be conditional and, before a decision on the merits, may be revoked, altered or amended by the court on its own motion or on the motion of any party." Pa. R. Civ. P. 1710(d).

In light of this court's recent decision in *AllCo*, which was based on the Superior Court's recent decision in *Glick*, the motion to decertify can also be viewed as a motion for reconsideration of the court's decision to certify the class based on newly developed legal authority.

14. 75 Pa. Cons. Stat. § 1716.

15. 77 Pa. Stat. § 531(5). *See also* 34 Pa. Code § 127.208(a) ("Payments for treatment rendered under the act shall be made within 30 days of receipt of the bill and report submitted by the provider.")

the benefits" so as to trigger the statute's 30 day payment period. The question before this court in this WCA case is what constitutes submission of sufficient "bills and records" to trigger the insurer's duty to pay within 30 days.

While the HCFA 1500 appears to qualify as a "bill" under the WCA,[16] it is not also the requisite "report."[17] Instead, providers are apparently required to submit the necessary reports on a form known as LIBC-9, which calls for information different than and in addition to what is set forth on the HCFA-1500.[18]

For the same reasons that the HCFA 1500 alone is

16. *See* 77 Pa. Stat. § 29 ("Bill' means a statement or invoice for payment of services...which identifies the claimant, the date of injury, the payment codes...and a description of the services provided on or in standard form prescribed by the Department of Labor and Industry."); 34 Pa. Code § 127.201(a) ("Requests for payment of medical bills shall be made either on the HCFA Form 1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims.")

17. *See* 77 Pa. Stat. § 531(2) ("Any provider who treats an injured employe shall be required to file periodic reports with the employer on a form prescribed by the department which shall include, where pertinent, history, diagnosis, treatment, prognosis and physical findings. The report shall be filed within ten (10) days of commencing treatment and at least once a month thereafter as long as treatment continues. The employer shall not be liable to pay for such treatment until a report has been filed.")

18. *See* 34 Pa. Code § 127.203 ("(a) Providers who treat injured employees are required to submit periodic medical reports to the employer, commencing 10 days after treatment begins and at least once a month thereafter as long as treatment continues. If the employer is covered by an insurer, the provider shall submit the report to the insurer.... (c) The medical reports required by subsection (a) shall be submitted on a form prescribed by the Bureau for that purpose. The form shall require the provider to supply, when pertinent, information on the claimant's history, the diagnosis, a description of the treatment and services rendered, the physical findings and the prognosis, including whether or not there has been recovery enabling the claimant to return to pre-injury work without limitations. Providers shall supply only the information applicable to the treatment or services rendered. (d) If a provider does not submit the required medical reports on the prescribed form, the insurer is not obligated to pay for the treatment covered by the report until the required report is received by the insurer.")

not reasonable proof of the amount of benefits under the MVFRL, the HCFA 1500 alone cannot trigger the running of the 30 day period under the WCA. Other documentation is needed, and such documentation will vary from patient to patient.[19]

As the Superior Court reasoned in *Glick*, which reasoning this court adopted in *AIICo*, and as borne out by the requirements of the WCA and its implementing regulations:

> Receipt of the HCFA-1500 Form is merely indicative of treatment and provides prima facie evidence that such treatment was medically justified. It does not establish coverage for such treatment. Whether an insured is entitled to coverage in the form of medical benefits raises additional questions unanswered by mere submission of the form, including causation for example [and medical necessity. Such questions of fact must be] answered on a case by case basis after review of relevant evidence... This factual inquiry requires individualized determinations not readily suitable for class action.[20]

The proof offered at trial in this action also supports this conclusion. Freedom introduced evidence from PMA's computerized records which showed an initial "image received date" for each claim and a payment date more than thirty days thereafter. However, Freedom failed

---

19. *See* 34 Pa. Code § 127.203 (c) ("The [report] form shall require the provider to supply, when pertinent, information on the claimant's history, the diagnosis, a description of the treatment and services rendered, the physical findings and the prognosis, including whether or not there has been recovery enabling the claimant to return to pre-injury work without limitations. Providers shall supply only the information applicable to the treatment or services rendered.")

20. *Glick*, at pp. 7-9.

to establish that the "image received date" constituted the date that all the requisite "bill and report(s)" were submitted to PMA. To the contrary, PMA's witness testified that the "image received date" may reflect the receipt of only one of such necessary forms, or neither, and providers may have to submit supplemental forms or information to PMA after the "image received date" in order to trigger the 30 day payment period under the WCA.[21]

In this case, proof as to one claimant does not constitute proof as to all;[22] instead, it constitutes proof as to none. In order to prove the class members' claims, plaintiffs would have to sift through each of the insurer's claims files[23] to show what forms and information were submitted and when such submission was complete before plaintiffs could establish the date from which interest could be computed on each class member's claim.[24]

Freedom apparently recognizes that the claims files are the best and only proof as to when all the requisite forms and information were submitted to PMA because it has filed a motion to re-open the trial record to include 9 of Freedom's claims files on which Freedom asserts it is due a total of $4,965 in interest from PMA. Freedom neglected to offer such files as evidence at trial,[25] so understandably PMA did not cross-examine any Freedom witness or offer rebuttal evidence as to those non-proffered files. It would

21. *See* November 19, 2013 Notes of Testimony ("NT"), pp. 56-74; 92-97; 128-134.

22. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 409, 34 A.3d 1, 22 (2011) (discussing commonality requirement).

23. Or at least a representative sampling of them.

24. *See* NT, pp. 45, 59-60.

25. Freedom apparently, and mistakenly, believed that this court's reliance upon the contents of such files when granting the original motion to certify the class somehow made them part of the record for purposes of the trial on the merits.

be prejudicial to PMA to admit such files now when PMA can no longer dispute or explain their contents. However, such prejudice can be cured by allowing both parties to re-litigate Freedom's individual claims only. Since such limited claims are for less than $50,000, the re-trial shall take place in this court's arbitration program.

## CONCLUSION

For all the foregoing reasons, defendants' motion to decertify the class and for judgment in favor of defendants and plaintiffs' motion to re-open trial record are both granted in part and denied in part.

## ORDER

And now, this 8th day of August, 2014, upon consideration of defendants' motion to decertify the class and for judgment in favor of defendants, the response thereto, and all other matters of record, and in accord with the opinion issued simultaneously, it is ordered that said motion is granted in part and the class is decertified. The remainder of the motion is denied.

Upon consideration of plaintiffs' motion to re-open trial record, the response thereto, and all other matters of record, it is ordered that said motion is granted in part and plaintiff's individual claims against defendants shall be transferred to this court's arbitration program for trial. The remainder of the motion is denied.

It is still further ordered that plaintiffs' motion to strike is dismissed as moot.